THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SUSAN ELAINE KAIL, Defendant-Appellant.

Fourth District   No. 4—86—0036

Opinion filed December 9, 1986.

GREEN, J., dissenting.

Daniel D. Yuhas and Deborah L. Rose, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged by information in the circuit court of Champaign County with the offense of unlawful possession with intent to deliver more than 30 but not more than 500 grams of a substance containing cannabis in violation of section 705(d) of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 705(d)). Prior to trial, an indictment charging the same offense was returned, filed, and substituted for the information. Defendant's motion to suppress the cannabis and certain inculpatory statements made by defendant during her arrest was denied after a hearing thereon. Thereafter, defendant and the State agreed that the State would move the court to substitute the indictment with an information charging defendant with the same offense, which motion was made and granted. In addition, defendant and the State stipulated to the evidence produced at the hearing on the defendant's motion to suppress the evidence and submitted the case for a trial at bench upon the stipulated evidence. At the conclusion of the trial, the court found defendant guilty and sentenced her to a term of 12 months. This appeal follows.

Three issues are raised on appeal: whether defendant's rights to (1) equal protection and (2) due process under the fourteenth amendment were violated, and (3) whether a full custodial arrest of defendant solely because she was unable to produce adequate proof of identification or to pay bond was an unreasonable seizure under the fourth amendment.

The operative facts, briefly recapitulated, showed that on October 3, 1985, at approximately 10:47 p.m., defendant was riding a bicycle on a business sidewalk in the city of Champaign. According to the testimony of Officer Seeley, the arresting officer, she stopped defendant under a police-department policy requiring strict enforcement of all laws against suspected prostitutes, she suspected defendant to be a prostitute, and she would not have stopped defendant if she did not so suspect. After stopping defendant, Officer Seeley noticed that defendant's bicycle lacked a bell. Riding a bicycle on a business sidewalk and failing to equip the bicycle with a bell are violations of the Champaign

city ordinances. Officer Seeley then charged defendant with failing to have a bell on her bicycle but did not charge her with riding a bicycle on a sidewalk. Because defendant lacked both adequate proof of identification and $50 to post bond, Officer Seeley arrested her, performed a "pat-down" search, handcuffed defendant and drove her to the police station where she was to be jailed until she could produce bond or proof of identification. Preliminary to placing her in a cell, defendant was subjected to an inventory search during the course of which police uncovered the cannabis. Further facts as necessary to an understanding of the issues will be developed below.

Because we find that defendant's right to equal protection was violated, we do not address the other issues raised by her on appeal.

The State contends that the police department's policy of enforcing all ordinances against individuals it suspects of being prostitutes, but not against individuals not so suspected, furthers its legitimate goal to eradicate prostitution from the community.

We begin our analysis by stating what this case is and is not about. We are here confronted with the constitutionality of an administrative policy under which an otherwise constitutional ordinance is selectively enforced. This case does not involve a police officer's discretion to determine whether under the circumstances enforcement was warranted. Nor does this case involve the enforcement of a law the purpose of which is to combat prostitution. Rather, the law involved is an obscure minor ordinance the purpose of which is to assure a modicum of safety in warning of the approach of a bicycle.

■■■ While the State has broad discretion to enforce its laws, that discretion may not be exercised on the basis of an arbitrary classification. Claims of selective enforcement of the laws are appropriately judged according "to ordinary equal protection standards." (*Wayte v. United States* (1985), 470 U.S. 598, 608, 84 L. Ed. 2d 547, 556, 105 S. Ct. 1524, 1531.) Where heightened scrutiny is inappropriate, the challenged State action is presumed to be valid and will be sustained where the classification is rationally related to a legitimate State interest. (*City of Cleburne v. Cleburne Living Center* (1985), 473 U.S. 432, 440, 87 L. Ed. 2d 313, 320, 105 S. Ct. 3249, 3254.) However, the State "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." (473 U.S. 432, 446, 87 L. Ed. 2d 313, 324, 105 S. Ct. 3249, 3258.) It is the duty of the courts to decide whether classifications bear a rational relationship to the law being enforced. The enforcement of an ordinance adopted by a city's governing body must satisfy the same requirement that is applicable to the enforcement of a

statute enacted by the General Assembly. See *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368, 371, 483 N.E.2d 1245, 1250, 1252.

The record in this case is clear. Officer Seeley testified that she stopped defendant pursuant to a police department policy to strictly enforce all ordinances against suspected prostitutes, that she suspected defendant of being a prostitute, and that she would not have stopped defendant but for her suspicion and the department's policy. Moreover, Officer Seeley acknowledged on cross-examination that she had, during the course of her three years of employment with the Champaign police department, seen literally hundreds, if not thousands of bicycles without bells around the Champaign university campus, but had not arrested anyone, prior to her arrest of defendant, for that offense.

■ While we recognize the State's right to legislate and enforce laws designed to combat prostitution (see, *e.g., People ex rel. Difanis v. Boston* (1981), 92 Ill. App. 3d 962, 967-68, 416 N.E.2d 333, 338), the law before us is of a different character. The purpose of the ordinance requiring a bell on a bicycle clearly does not envision the eradication of prostitution. There is no conceivable set of facts which would establish a rational relationship between the class of suspected prostitutes and the State's legitimate interest in enforcing the ordinance requiring bells on bicycles. We can conceive of no such set of facts, and the State has failed to propound any. To suggest that the requirement of a bell on one's bicycle should be enforced only against suspected prostitutes because it helps combat prostitution is clearly so attenuated as to render the classification arbitrary or irrational.

Reversed.

SPITZ, P.J., concurs.

JUSTICE GREEN, dissenting:

The majority correctly holds that the classification created by the policy of selective enforcement against suspected prostitutes is not a suspect classification requiring strict scrutiny but one subject to the rational-basis test. A difficult question arises as to whether the rational basis must apply to the relationship between the enforcement policy and the law being enforced as the majority holds or between the enforcement policy and a legitimate governmental policy. A highly respected text discusses this question and indicates that the courts have not focused sharply upon the question. (2 W. LaFave & J. Israel, Crim-

inal Procedure sec. 13.4, at 197 (1984).) I conclude that the better rule is to merely require the relationship between the selective policy and legitimate governmental policy to have a rational basis. Here, I would affirm.

In regard to selective prosecutions not subject to a direct-scrutiny test, LaFave and Israel state in part:

"Yet another important issue regarding the meaning of the 'rational relationship' test in this context concerns the subject matter against which the classification must appear to be rational. That is, is it sufficient 'that the classification bear a rational relationship to a permissible governmental purpose,' or must the classification be 'rationally related to the purposes of the criminal law *under which the defendant is charged*'? More particularly, is it permissible to select out a person for prosecution under a particular law because of an unprovable belief that this individual is guilty of other criminal conduct? Though the propriety of such a charging policy has been vigorously debated by the commentators, the courts have given little attention to the question of whether such a policy is vulnerable on equal protection grounds. It would seem, however, that the extent of vulnerability depends upon the nature of the statute under which the prosecution is brought.

Consider, for example, *United States v. Sacco* [(9th Cir. 1970), 428 F.2d 264], where the defendant objected that he was singled out, 'based on his suspected role in organized crime,' for investigation and prosecution under the alien registration laws. That this was the basis of selection was not disputed, yet the court unhesitantly held that it 'cannot be said that that standard for selection is not rationally related to the purposes of *** the alien registration laws.' In other words, it is quite rational, considering the purposes underlying the alien registration statute, to focus upon those aliens suspected not to be law-abiding. One might well doubt whether the result would be the same were Sacco singled out on the same basis for prosecution under a generally nonenforced criminal adultery statute; there is nothing relating to the policies underlying *that* law which would explain a focus upon those suspected of organized crime. Yet, authority is to be found which would seemingly produce the same result on those facts. Illustrative in *People v. Mantel* [(N.Y. Crim. Ct. 1976), 88 Misc. 2d 439, 388 N.Y.S.2d 565], where a task force of fire, safety and health inspectors made intensive and frequent inspections only of 'sex related' businesses in the Times Square

area after more traditional efforts to curb vice in that vicinity had failed. Stating the test as being 'whether a particular classification bears a rational relationship to the *broad purposes* of the criminal law,' the court upheld the practice. Whether the court would have reached the same result under the *Sacco* approach is problematical." (Emphasis in original.) 2 W. LaFave & J. Israel, Criminal Procedure sec. 13.4, at 197-98 (1984).

Neither *Wayte* nor *Cleburne* speaks to the question of whether the rational basis must be applied to the relationship between the selective policy and the offense to which it is being applied. In *Wayte,* the court held that a selective policy of prosecuting only those suspected violators of Selective Service registration requirements who had reported the violations themselves or had been reported by others met constitutional muster. No issue was raised as to whether a rational relationship between the offense being selectively prosecuted and legitimate governmental interest would suffice. In *Cleburne,* the issue was whether an ordinance which prohibited operation of a group home for mentally retarded in a particular area was unconstitutional as applied to the owners of a site, because of the lack of rational relationship between the ordinance and the legitimate governmental interests of the municipality.

The invalidation of the selective enforcement policy here will be of little impact, but the precedent being established will have substantial impact. It will prohibit selective enforcement focusing on those thought to be guilty of organized crime when the selective enforcement involves an offense unrelated to the criminal conspiracies of which the accused are suspected. No cases adopting the view of the majority have been called to my attention, and the cited text indicates that few if any of such decisions by a court of review exist.

I recognize that LaFave and Israel indicate that little authority exists in support of a theory that the rational relationship need exist only between the offense being selectively prosecuted and legitimate governmental interest, and I respect their conclusion that such a relationship is insufficient to justify selective prosecution. However, when the classification upon which the selective policy is based is not suspect within equal protection concepts and there is a legitimate governmental interest served by the prosecution, I do not deem one prosecuted upon a showing of probable cause to be unduly prejudiced by the prosecution. Such a prosecution should not be constitutionally impermissible.

The legitimate governmental interest in deterring prostitution justified the instant policy of selective prosecution.