736 P.2d 857

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Keith GILBERT, Defendant-Appellant.**

No. 16246.

Court of Appeals of Idaho.

April 10, 1987.

Petition for Review Denied June 9, 1987.

Charles B. Lempesis and Malcolm S. Dymkoski (argued), Post Falls, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas (argued), Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

After a jury trial in Kootenai County, Keith Gilbert was convicted on thirty-five counts of welfare fraud and on one count of state income tax evasion. In this appeal Gilbert has presented three issues: (1) whether the trial court erred in refusing to dismiss all but one of the welfare fraud charges due to selective prosecution; (2) whether the welfare fraud should have been treated as a single crime rather than as thirty-five separate offenses; and (3) whether the evidence was sufficient to establish guilt on the elements of tax evasion, including the element of "wilfulness." For reasons explained below, we affirm the judgment of conviction on all counts.

We begin with a statement of the essential facts. In late 1979, Keith Gilbert moved to Post Falls, Idaho, from California. His two minor sons accompanied him. Gilbert applied for and received public assistance from the Idaho Department of Health and Welfare in the form of Aid to Families with Dependent Children (AFDC). This federally-funded and state-administered program is restricted to low-income families with children living at home. *See* 42 U.S.C. § 601. In July, 1980, Gilbert's former wife visited Idaho and returned to California with the two boys. Thereafter, the boys remained in California. Nevertheless, during thirty-five subsequent months, Gilbert applied for and received AFDC checks in Idaho.

While these events were unfolding, Gilbert renewed his prior affiliation with "The Church of Jesus Christ Christian," more commonly known as the "Aryan Nations." Gilbert had been involved with the organization as far back as the early 1960s, when he lived in California. Gilbert became an active and visible member in Idaho. Eventually, he established his own group, naming it "The Restored Church of Jesus Christ Christian." As a vocal proponent of white supremacist views, Gilbert attracted media attention. He frequently spoke out against policies of the United States government toward ethnic, racial and religious minorities.

Approximately in 1984, several state agencies became suspicious of Gilbert's financial affairs.[1] The Tax Commission began an investigation and summoned Gilbert to appear at an administrative hearing. Gilbert refused to answer many of the questions propounded, and his financial records were subpoenaed. The investigation culminated in 1985, when the county prosecutor charged Gilbert with welfare fraud and with wilful evasion of state taxes on income that included the illegally obtained welfare benefits.

Gilbert moved to dismiss thirty-four of the thirty-five welfare fraud counts, claiming that the prosecutor had charged multiple offenses because of Gilbert's extreme political beliefs. The district court allowed defense counsel to engage in substantial discovery for the purpose of determining whether Gilbert was a victim of oppressive prosecutorial conduct. Employees of the Kootenai County prosecutor's office and of the Department of Health and Welfare were deposed. This evidence was presented to the court prior to trial and Gilbert's motion to dismiss was denied. At trial, Gilbert was found guilty on all thirty-five counts of welfare fraud and on the single

---

1. The record is not entirely clear as to exactly which agency—the Tax Commission, the Department of Health and Welfare, or the Department of Law Enforcement—first became interested in Gilbert and why. Gilbert's statements to the media may have prompted the Tax Commission to look into Gilbert's tax filing status. It is also possible that the case was referred to the Tax Commission or to the Department of Law Enforcement by a Department of Health and Welfare eligibility examiner in charge of processing Gilbert's AFDC account. The record further suggests that this matter could have been brought to the attention of the state authorities when Gilbert's former wife, while residing in California, filed a child support action against Gilbert in Kootenai County.

count of income tax evasion. This appeal followed.

## I

We turn initially to Gilbert's contention that the trial court erred in refusing to dismiss all but one of the welfare fraud counts. As this issue evolved during the pretrial discovery, it focused not merely upon the number of offenses charged but more broadly upon the prosecutor's motivation for filing any welfare fraud charges against Gilbert. Gilbert claimed that he was targeted for prosecution due to his exercise of a First Amendment right to advocate his controversial political philosophy.

Preliminarily, we note that the appellate standard for reviewing the denial of a motion to dismiss on the ground of selective prosecution has been articulated by the federal courts. They have held that the issue is one of fact, turning in large measure upon the credibility of witnesses. Consequently, they have chosen to apply a standard of "clear error" analogous to the civil standard found in F.R.C.P. 52(a). *E.g., United States v. Wilson,* 639 F.2d 500 (9th Cir.1981). We will apply a parallel standard in this case.

The defense of selective prosecution is part of a web of constitutional constraints that overlie the discretionary powers accorded to prosecuting authorities. So long as the prosecutor has probable cause to believe that a suspect has committed an offense defined by statute, the decision whether to prosecute, and what charge to file, rests in the prosecutor's discretion. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Such discretion is allowed because a decision to prosecute is generally ill-suited to judicial review. *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

Nevertheless, the Supreme Court in *Wayte* has recognized a defense of selective prosecution and has outlined its substantive elements. A defendant bears the burden of establishing (1) that he was singled out for prosecution and (2) that the decision to prosecute him, rather than other persons, was based upon an impermissible factor such as race, religion or the exercise of a constitutional right.[2] *Id.; see also Attorney General of the United States v. The Irish People, Inc.,* 684 F.2d 928 (D.C. Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *People v. Smith,* 155 Cal.App.3d 1103, 203 Cal.Rptr. 196 (1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985). The defense may be established by showing that the state selected the defendant from a larger group of non-prosecuted alleged violators because of his exercise of a constitutional right. *Maxfield v. State,* 108 Idaho 493, 700 P.2d 115 (Ct.App.1985). However, incomplete enforcement of the laws, standing alone, does not offend the federal or state constitution. *See Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Henson v. Department of Law Enforcement,* 107 Idaho 19, 684 P.2d 996 (1984).

The first inquiry, then, is whether Gilbert actually was "singled out" from other alleged violators of the public assistance laws. Gilbert contends that there were many other persons in Kootenai County and in the surrounding area, known to authorities, who fraudulently obtained public assistance but who were not prosecuted. Gilbert's counsel deposed the Kootenai County prosecuting attorney and the regional eligibility supervisor for the AFDC section in the Department of Health

---

2. Most claims of selective prosecution must pass a threshold test of plausibility in order for the court to grant the defendant discovery to establish the defense more fully. This test was not expressly applied in the present case. The trial court granted Gilbert's request for discovery without any preliminary showing. For future reference, however, we mention that the proper standard for determining whether discovery should be ordered is whether the defendant can make out a "colorable basis" for a selective prosecution claim. *Wayte v. United States, supra* (Brennan, J., dissenting); *United States v. Murdock,* 548 F.2d 599 (5th Cir.1977). To make this showing a defendant must allege sufficient facts in support of his selective prosecution claim "to take the question past the frivolous state." *United States v. Hazel,* 696 F.2d 473, 475 (6th Cir.1983).

and Welfare. The prosecuting attorney's deposition disclosed that welfare fraud cases typically were referred to the prosecutor's office by the Department of Law Enforcement and the Department of Health and Welfare. The Gilbert case was referred jointly by the Tax Commission and the Department of Health and Welfare. The prosecutor stated that his office followed guidelines set down by statute and recommended by American Bar Association guidelines in deciding whether to press charges. The two major criteria cited by the prosecutor were the existence of probable cause to believe a potential defendant was guilty and the likelihood that evidence could be presented at trial to prove guilt beyond a reasonable doubt.

Statistics obtained from the Department of Health and Welfare revealed that in Region I (north Idaho), during three years prior to Gilbert's arrest, there had been more than two hundred reported cases of welfare overpayments. Thirteen of these involved overpayment of AFDC benefits due to intentional misstatements by applicants. The remainder consisted of intentional or unintentional misrepresentations in applications for food stamps. Out of all these cases, prosecutions were initiated against at least five persons in Kootenai County, and further investigation of five others was conducted with the aim of gathering evidence necessary for prosecution. There was no indication that any of the ten actual or prospective defendants were politically affiliated with Gilbert or the "Aryan Nations." Most of the unprosecuted cases were closed due to voluntary restitution agreements or lack of sufficient evidence.

In sum, the information gathered in pretrial discovery tended, at most, to show incomplete enforcement of the welfare fraud laws. But nowhere did the evidence indicate that the Kootenai County prosecutor's office had utilized an unusual procedure to "single out" Gilbert. The first prong of the selective prosecution test under *Wayte* was not satisfied. Accordingly, we do not reach the second question, whether the prosecutor exhibited discriminatory motives.[3] We conclude that the district court did not clearly err in finding a lack of selective prosecution. We further note that the facts of this case do not rise to the level of selectivity found in cases where convictions have been reversed for selective prosecution. *See, e.g., United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) (only persons prosecuted for refusal to answer census questions were those four defendants who vocally opposed the census, while silent offenders were not prosecuted); *People v. Kail*, 150 Ill.App.3d 75, 103 Ill.Dec. 662, 501 N.E.2d 979 (1986) (alleged prostitute prosecuted for failure to have bell on bicycle).

## II

Gilbert next contends that, as a matter of law, he should not have been charged and convicted on thirty-five separate counts of welfare fraud. Gilbert was convicted under I.C. § 56–227(a), which provides as follows:

> Whoever knowingly obtains, or attempts to obtain, or aids or abets any person in obtaining, by means of a wilfully false statement or representation, or other fraudulent devices, public assistance, relief or federal-aid assistance to which he is not entitled, or in an amount greater than that to which he is justly entitled, shall be punished in the same manner and to the same extent as for larceny or theft of the money or value of the public

---

**3.** Gilbert has invited our attention to a statement made by the deputy prosecutor at the preliminary hearing:

Now, there may be some questions about the number of charges that are filed against this man, why 35 welfare charges against him. Well, frankly the reason is, because he's been using our money, taxpayers [sic] money to proselytize and to preach a doctrine of hate against people who want to live freely in this community and around this country.

When the full context of this statement is examined, it becomes clear that the deputy prosecutor was not discussing the decision to prosecute Gilbert; rather, he was explaining why the welfare fraud charge was set forth in thirty-five counts. Nevertheless, we do not condone the statement. It could have led to a finding of discriminatory motive by the prosecutor if the threshold requirement of "singling out" had been satisfied.

assistance so obtained or attempted to be so obtained.

The thirty-five counts alleged receipt of AFDC checks in separate months. The amount of each check exceeded $150.00, the statutory minimum for classifying an offense as felony grand theft under I.C. § 18–2407(b)(1).

Gilbert's argument appears to embrace two points. First, he urges that the thirty-five welfare payments should not have been charged separately because they were obtained as part of a common scheme or plan. Second, Gilbert argues that even if the payments could be charged individually, the trial judge should have instructed the jury that they could return a verdict convicting on only one, rather than on all, of the charges. As to the latter argument, if Gilbert is suggesting that a jury has independent discretion to consolidate charges, we must reject the suggestion. We have not been cited, nor have we found, any authority entitling a jury to disregard separately charged and proven offenses. We fail to see the wisdom in granting such unbridled discretion to juries.

■ Returning to the common scheme argument, Gilbert cites *State v. Lloyd*, 103 Idaho 382, 647 P.2d 1254 (1982), for the proposition that separate thefts may be aggregated where the evidence shows that all thefts were part of a common scheme or plan. This is a generally accepted principle of law. *State v. Pena*, 15 Or.App. 582, 516 P.2d 761 (1973); *State v. Bonefield*, 37 Wash.App. 878, 683 P.2d 1129 (1984). But the principle applies only where, as illustrated by *Lloyd*, the value of several interconnected petit thefts can be consolidated to reach the statutory threshold of grand theft. A prosecutor may charge a grand theft where a series of otherwise petit thefts are parts of a single, continuous common scheme. Because welfare fraud is considered theft by statute, this principle would apply if a defendant received several welfare checks, each less than $150.00, but with an aggregate value over $150.00, pur-

suant to a single scheme. *People v. Bailey*, 55 Cal.2d 514, 11 Cal.Rptr. 543, 360 P.2d 39 (1961); *Dawson v. Superior Court*, 138 Cal.App.2d 685, 292 P.2d 574 (1956); *People v. Licausi*, 23 Misc.2d 75, 200 N.Y. S.2d 582 (N.Y.Cty.Ct.1960).

However, in the present case, we are not concerned with aggregating several petit thefts into one grand theft. Rather, we are presented with several grand thefts. Gilbert fraudulently obtained thirty-five AFDC checks, each exceeding $300.00. Thus, *Lloyd* is inapposite to the question before us. There is no logic in the specious assertion that because a prosecutor *may* consolidate several *misdemeanors* into a single felony, he *must* consolidate several *felonies* into one larger felony. The situations are not symmetrical.

■ Moreover, the evidence here does not indicate that Gilbert's thirty-five thefts consisted of passively receiving welfare checks after making an initial, fraudulent application. Instead, it appears that to receive each monthly check, Gilbert was required to complete a new AFDC application form. It is well settled that the appropriation of different sums of money on separate occasions by fresh affirmative acts constitutes the commission of separate offenses. *People v. Stanford*, 16 Cal.2d 247, 105 P.2d 969 (1940). A defendant may be convicted of separate counts of grand theft when the evidence shows that the offenses are separate and distinct, though similar. *People v. Bailey, supra.* Accordingly, we find no error in the trial court's refusal to dismiss thirty-four of the welfare fraud counts or in the court's failure to instruct the jury on Gilbert's theory of consolidated felonies.[4]

### III

■ Gilbert's final contention is that the trial court should have set aside the jury verdict, and acquitted him on the charge of state income tax evasion, because he did not know that illegally obtained welfare benefits were taxable. The obligation to

---

4. The district judge properly took the similarity of offenses into account at sentencing. He imposed *concurrent* seven-year indeterminate terms for all of the grand thefts. These sentences have not been challenged on appeal.

file a state income tax return, and to pay the tax, is set forth in I.C. § 63–3030. This obligation devolves upon all persons who have received a minimum level of "taxable" income, as defined in part by I.C. § 63–3022. Section 63–3022 adopts the definition of taxable income set forth in section 63 of the federal Internal Revenue Code (26 U.S.C. § 63). Taxable income in section 63, in turn, is essentially based upon the concept of "gross income" as defined in 26 U.S.C. § 61. Gross income embraces income from all sources unless specifically exempted. Nowhere in section 61 or section 63 are welfare payments of any kind exempted. By administrative ruling, the Internal Revenue Service has decided not to collect taxes on welfare benefits, but this policy extends only to lawfully obtained benefits. Rev.Rul. 78–53, 1978–1 C.B. 22. *See also James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (illegal gains includable in gross income). The only state law addressing taxation of welfare benefits is I.C. § 63–3086, which applies narrowly to the annual building fund excise tax. It provides that the tax will not be levied against income in the form of public assistance "lawfully" received.

In this case, Gilbert was prosecuted under I.C. § 63–3075, the statute prescribing penalties for noncompliance with tax obligations. Misdemeanor penalties are set forth in subsection (a) for failure to pay taxes; felony penalties are provided in subsection (b) for "wilfully ... evad[ing]" taxes.[5] Gilbert was convicted of a felony under subsection (b). This statute has not been analyzed previously by the Idaho ap-

pellate courts. Because the state income tax statutes incorporate federal law by reference, it is appropriate to consult federal decisions for interpretive guidance. *See, e.g., People v. Smith,* 155 Cal.App.3d 1103, 203 Cal.Rptr. 196 (1984).

The federal courts have construed a penalty statute very similar to I.C. § 63–3075. Subsection (a) of the Idaho statute is almost identical to its federal counterpart, 26 U.S.C. § 7203. Subsection (b) is likewise substantially the same as its federal counterpart, 26 U.S.C. § 7201. In *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), the Supreme Court examined the federal statutory scheme. The Court held that the misdemeanor and felony provisions contained separate and distinct elements. Violation of the misdemeanor provision, without more, does not constitute a violation of the felony provision.

The *Spies* court described the felony provision as the "capstone" of a system of sanctions which "singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency." *Id.* at 497, 63 S.Ct. at 367. The Court continued:

> The difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define.... The difference between the two offenses, it seems to us, is found in the affirmative action implied from the term "attempt," as used in the felony subsection. It is

---

5. The full text of I.C. § 63–3075, subsections (a) and (b), is as follows:

Penalties.—(a) Any person required under this act to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this act, who *wilfully fails to pay such tax, make such returns, keep such records, or supply such information at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and,* upon conviction thereof, be fined not more than

$300, or imprisoned for not more than six (6) months or both.

(b) Any person required under this act to collect, account for and pay over any tax imposed by this act, *who wilfully fails to collect or truthfully account for and pay over such tax, and any person who wilfully attempts in any manner to evade or defeat any tax imposed by this act or the payment thereof,* shall, in addition to other penalties provided by law, be guilty of a *felony* and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five (5) years or both. [Emphasis added.]

not necessary to involve this subject with the complexities of the common-law "attempt." The attempt made criminal by this statute does not consist of conduct that would culminate in a more serious crime but for some impossibility of completion or interruption or frustration. This is an independent crime, complete in its most serious form when the attempt is complete, and nothing is added to its criminality by success or consummation.... We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues, Congress intended some *willful commission* in addition to some *willful omissions* that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, *but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.*

*Id.* at 497–499, 63 S.Ct. at 367–368 [emphasis added]. By way of illustration, the Court listed examples of conduct from which an affirmative, wilful attempt might be inferred. The list included keeping double sets of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal. The Court added that "[i]f the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crimes." *Id.* at 499.

Here, the prosecutor presented undisputed evidence that Gilbert's various sources of income were sufficient, when AFDC payments were included, to incur tax liability for the year in question (1983). Gilbert did not file a return or pay any tax that year. He engaged in a continuous scheme to defraud the public assistance system. In addition to reporting falsely that his children were living with him, he placed all of his assets and income in a church bank account. When he appeared before the Tax Commission as part of an administrative inquiry, he refused to disclose information about his income or transactions with the church. He challenged the Commission to take him to court. At trial he asserted that he had "checked the books" and had concluded that illegally obtained welfare benefits were nontaxable. However, he cited no particular authority for this asserted belief.

Although many of these facts were related to proof of the welfare fraud, the jury was entitled under *Spies* to consider them also in determining whether Gilbert had committed affirmative acts constituting an attempt to evade the payment of state income tax. The facts must be reviewed in light of a deferential appellate standard. A judgment of conviction, entered upon a jury verdict, will not be set aside when there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Filson,* 101 Idaho 381, 613 P.2d 938 (1980). "[W]e are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence." *State v. Campbell,* 104 Idaho 705, 718–19, 662 P.2d 1149, 1162–63 (Ct.App.1983). Furthermore, we view the evidence in the light most favorable to the respondent. *State v. Fenley,* 103 Idaho 199, 646 P.2d 441, 445 (Ct.App.1982).

When the evidence in the present case is so viewed, we cannot disturb the verdict. The jury reasonably could have inferred that Gilbert's conduct was intended both to procure welfare benefits and to evade taxation. The jury also could have disbelieved Gilbert's unsupported assertion that he had "checked the books" and had discovered a good faith basis for believing that illegally obtained welfare benefits were nontaxable.

# 812

We hold that the evidence was sufficient to sustain the verdict on tax evasion.[6]

The district judge imposed a two-year indeterminate sentence, consecutive to the welfare fraud sentences, on the tax evasion count. Gilbert now argues that the two-year sentence represented an abuse of the district court's discretion. The only asserted basis for this argument is Gilbert's continued claim that he did not wilfully evade a tax. That issue has been put to rest by the jury's verdict, as reviewed under the deferential appellate standard just discussed. Gilbert has not contended that the sentence was unduly harsh for any other reason. Accordingly, we have no occasion to invoke the standards enunciated in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), for examining a claim of an excessive sentence.

The judgment of the district court is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**6.** We note that the jury was instructed on the elements of wilfulness as discussed in *Spies.* The instructions clearly informed the jury that they could not convict without proof beyond a reasonable doubt that Gilbert had committed some act in furtherance of tax evasion. Neither the state nor Gilbert requested an instruction on the lesser included misdemeanor offense. Such an instruction could have been given if requested. *See Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); I.C.

§ 19–2132. We further note that the district court refused to give an instruction further defining wilfulness in terms of bad faith and evil intent. This meaning has been imparted to the federal felony statute by the Supreme Court. *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933). However, the district court's ruling on the proffered instruction has not been raised as an issue on appeal, and we will not address it *sua sponte.*