SAM COLLINS V. THE STATE.

No. 3052.   Decided November 23, 1904.

**1.—Murder—Jury—Special Venire—Waiver—Agreement.**

Where the record showed that a special venire was waived by appellant and that he, as well as his attorney, had agreed with the State to take the regularly drawn jury for that week of the court to select the jury from, as the venire for the trial, there was no error in not ordering and drawing a special venire, from which to select a jury.

**2.—Same—Discharged After Acceptance, but Before Being Sworn.**

Where the record showed that a juror was excused after being accepted by both parties, and then stated to the court that on account of sickness, he was unable to sit as a juror, before he was sworn as a juror in the case, and the attorneys agreed to excuse him, there was no error.

**3.—Continuance—Application—Bill of Exceptions.**

Where it was stated in the motion for new trial that defendant, when his case was called for trial, stated verbally that he desired the presence of an absent witness, and there is no application for a postponement or continuance, and there was no bill of exceptions, the matter will not be reviewed, even if there had been a formal application for continuance.

**4.—Evidence—Death Produced by Beating With a Stick.**

See evidence stated in opinion held to be sufficient to support an allegation that the deceased was killed by being beaten with a stick. Even if in fact it was not a stick of wood, but a blunt instrument, this allegation would be sustained.

Appeal from the District Court of Harrison. Tried below before Hon. Richard B. Levy.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*M. B. Parchman* and *M. Turney,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was awarded the death penalty on a charge of murder of Mariah Collins, alias Mariah Jacobs.

He urges a reversal, because the special venire was not ordered and drawn from which to select his jury. No bill of exceptions was reserved to this action of the court. On the contrary, when the question was raised on the motion for new trial, the facts show that the case was set down for trial on September 15th. When this occurred, an agreement was had in open court between counsel for the State and defendant, that the regularly drawn jury for that week of the court, consisting of thirty-six men, should take the place of and be regarded as the special venire in the case; and there was a waiver by both parties at the time to the summoning of any other number of persons than the thirty-six jurors. It was admitted by attorneys for defendant and defendant, that such should be the venire, and service thereof was waived. It is further recited in the statement of facts in regard to this matter that the manner of selecting the venire of thirty-six was agreed to by the defendant and the State. We do not see how appellant, under these circumstances could urge error in not having the special venire drawn in the usual way. He could waive a special venire, if he saw proper, as he did. This is an express waiver in open court, aided by an agreement to take the thirty-six jurors selected for the week as his special venire.

It is contended the judgment should be reversed because the juror Bell was excused after being accepted by both parties. The facts show that Bell was examined on his voir dire, qualified and was accepted by both parties. He stated to the court that he was suffering from a chronic sick headache, and was therefore physically unable to sit on the jury. The attorneys thereupon agreed to excuse him. He was not sworn as a juror in the case, but was only sworn to answer questions on his voir dire. The jury, as is usual in murder cases, was selected one at a time, and each juror sworn as such juror was accepted.

When the case was called for trial, defendant stated he desired the presence of an absent witness, who was alleged to live in Gregg County,

some twenty-four miles from Marshall, the county seat of Harrison County, where the case was being tried. This seems to have been a verbal statement to the court. The case went to trial, but no bill of exceptions appears in regard to this matter. It is simply stated as a ground of the motion for new trial. If the application for continuance had been made in proper form, and overruled, this court would not pass upon the supposed error in overruling it, unless there was a bill of exceptions reserved.

The only remaining question is based on the alleged insufficiency of the evidence to justify the verdict. The killing was one attended by circumstances of the most cruel and heartless character. By way of example, take the testimony of Dr. Livingtsone, who was summoned to the scene of the homicide. He says he found the dead body of the deceased, a large fleshy negro woman, who, in his opinion, had been dead thirty to thirty-six hours, when he saw her about seven o'clock on the evening of September 5, 1904. "My examination revealed, and I found, bruises all over her body, from her head to her feet. There was a considerable bruise on the forehead, and she was badly bruised on the wrist. The back was badly bruised all over. There were four ribs broken loose on each side of the backbone from the spinal column, and four ribs broken loose from breast bone, right over the heart and crushed in over the heart. The left ear was swollen. The injury breaking the ribs from the back bone, or the one breaking the ribs over the heart, would either of them have caused almost instant death. The wounds were caused, in my judgment, by the means and by the use of some blunt instrument on her body. The wound over the heart was about four inches long. I did not cut into the body." The testimony of Hill, justice of the peace, was almost identical with that of Dr. Livingstone. He testified further that the wounds on the body looked like they were made with some blunt instrument, as a stick. "There was a green sweet-gum stick lying near the door of the cabin in the yard. It was about as big as my wrist, where it had been cut from the stump, and had been twisted off at the other end. It was about four feet long and looked slick at one end, and some of the bark was off, as though it had been used at that end. There was proof that defendant and deceased were living together as man and wife, though not married; and that he was cruel to her. Witness Adams heard, a few days before the homicide, some one beat a woman in defendant's house, and heard her halloa, "Oh! Lordy! Oh! Lordy!" That was about the 23rd of August. On the 31st of the same month, he again heard some one beating a woman at defendant's house, and heard the woman hallo, "Oh, Lordy! Oh, Lordy, don't kill me." He saw the dead woman the next morning; did not at first report the matter, as he thought it was none of his business. This witness and also defendant and deceased were negroes. There are other matters and circumstances detailed of a similar character and nature. The point of contest on the sufficiency of the evidence is, that there is a variance between the allegations in the indictment and the

evidence adduced to support it, to wit: that the indictment alleges she was killed by beating with a stick, and the evidence does not sufficiently support that allegation. We are of opinion that it is sufficient. She was evidently killed with some blunt instrument, and a sweet-gum stick was found at the cabin where the beating and homicide occurred. If the evidence shows beyond a reasonable doubt that the killing occurred with a stick as alleged, it meets the demands of the law; and we are of opinion that this evidence is sufficiently specific to show that conclusion of fact. It may also be held, as being sufficiently cogent to sustain the conviction, if the wounds indicate and show beyond a reasonable doubt that the injuries causing the death were inflicted by some such blunt instrument as a stick, and the trend of the decisions in regard to this matter would indicate that the evidence was sufficient, even if in fact, it was not a stick of wood, but if it was a blunt instrument of that character. The indictment does not charge that the stick was wood, though the proof indicates that it was a sweet-gum stick. We believe that the evidence is amply sufficient to justify the verdict; and that there is no variance between the allegation in the indictment and the proof adduced to sustain it on that theory. It is not necessary to discuss the sufficiency of the evidence from any other standpoint. It is not attacked, indeed could not be successfully attacked. As the record is presented to this court, there is no error requiring a reversal, and the judgment is therefore affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]