## Murphy v. Commonwealth.

(Decided November 2, 1928.)

Appeal from Pike Circuit Court:

Homicide.—Where indictment charged defendant committed murder by striking and wounding S. with rock, piece of steel, or some hard substance, and evidence tended to show that defendant struck decedent with his fist and knocked him down and that decedent's head, on falling, struck hard substance on earth, causing fracture of skull which occasioned death, there was fatal variance between proof and charge.

STATON & KEESEE for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant was convicted of the offense of voluntary manslaughter and sentenced to three years and one day in the penitentiary. He appeals from that judgment.

On the 3d day of July, 1927, the appellant was engaged in a baseball game near the mining town of Delorme, W. Va. He and his wife lived at Freeburn in this state, just across the river from where the ball game was being played. His wife attended the game, but left before it was over. On her way home she was accosted by Joe Scales, a carpenter who also lived near Freeburn. Scales was under the influence of liquor and addressed some insulting remarks to Mrs. Murphy, but went no further than that. When the appellant reached home that evening his wife told him of the conduct of Scales. This naturally incensed appellant very much. He first sought out a constable for the purpose of having Scales arrested, but the constable declined to make the arrest unless Murphy would get out a warrant for that purpose. Murphy then sought Scales and found him seated on the front porch of the house of a neighbor. He called Scales to where he was and upbraided him for the insult offered Mrs. Murphy earlier in the afternoon. Scales denied having insulted Mrs. Murphy, whereupon Murphy called him a liar and struck him on the head with his fist. Murphy says before he struck Scales the latter had drawn his hand back as though to strike him. Murphy alone tells this, as every other witness says Scales had

made no hostile demonstration towards Murphy before or when Murphy struck him. Every witness in the case, both for the commonwealth and the accused, swear that Murphy hit Scales with his bare fist. It is true that the witness Farmer said, in response to a question with what did Murphy hit Scales:

> "I couldn't tell you that. From what I could see he had something around his hand. I couldn't see what he had.
>
> "Q. Anyway, what you could see, what you say?
>
> "A. I saw something like a white handkerchief around his hand. That is what I saw. I couldn't see what he hit him with."

This answer of Farmer does not contradict the testimony of the other witnesses, because at the best Farmer puts nothing in Murphy's hand other than a white handkerchief. When Murphy hit Scales, the latter fell upon some cinders and began to bleed profusely. He was unconscious when picked up and carried into the house. The physician who was summoned at once to treat Scales testified that he knew from an examination made of Scales at the time he rendered this first aid that the skull of Scales was fractured, but so far as this record shows this physician does not seem to have communicated that information to Scales. At all events, Scales seemed to recover in a few days and was back at his regular occupation of a carpenter, although on one or possibly more occasions he seems to have been troubled with what the witnesses called "spells." Along in September, while Scales was working upon a house, he became unconscious and again fell to the ground. He was carried to the Pikeville Hospital, where an X-ray showed the fracture of the skull which the first-aid physician testified he found immediately after Scales had been knocked down by Murphy. Scales died the next day from his injury. Appellant was then indicted, charged with willful murder. The indictment alleged that the offense was committed by the appellant "striking and wounding him, the said Joe Scales, in and upon the body, limbs, body and person, with a rock, piece of steel or some hard substance, the exact kind and material of which is unknown to the grand jurors, and the same being a deadly weapon from which striking and wounding the said Joe Scales did then and there presently die." On the trial the medical testimony

without contradiction established that the fracture of the skull which caused Scales' death could not have been caused by the bare fist of the appellant. There is no testimony in this record to the contrary. This testimony, coupled with all of the testimony in the case to the effect that appellant did hit Scales with his bare fist, leads irresistibly to the conclusion that the fracture of the skull which occasioned the death of Scales was caused by Scales' head coming in contact with something hard upon the earth when he was knocked down by Murphy. At the close of the testimony appellant moved for a peremptory instruction, which was overruled. On the submission of the case to the jury he was convicted, as heretofore stated, of the offense of voluntary manslaughter.

We are of opinion that the appellant's motion for a peremptory instruction should have been sustained. The applicable law is so well and clearly stated in the case of Elliott v. State, 4 Okla. Cr. 224, 111 P. 820, 140 Am. St. Rep. 683, that we quote at some length from that opinion:

"The law is fairly liberal to the prosecution so far as the question of variance between the instrument of death alleged and that proven is concerned; and where the instrument laid and that proved are substantially of the same character, capable of inflicting practically the same nature of injury in substantially the same manner, there is no variance. Thus evidence as to a dagger, sword, bayonet, hatchet, etc., have been held to support the averment of a knife, striking with a stick, club, metal bar, or pistol an allegation of striking with a rock, shooting with a gun an allegation of shooting with a pistol, and strangling with a scarf or cord an averment of a strangling or choking with the hands. But, if the allegation be of a stabbing or shooting and the evidence shows a poisoning or starving, the variance is fatal. The question in each case is whether the nature and character of the injury and the manner and means of inflicting it as proved is practically and substantially, though not identically, the same as that alleged. And it is held with practical uniformity that where the allegation is that the accused directly inflicted the fatal wound, and the proof shows that the same was produced by some other different and independent agency, though under such circumstances as to make the accused criminally responsible therefor, there is a fatal variance. Thus it is said in

Wharton on Homicide (3d Ed.) sec. 567: 'Where an indictment stated that the defendant assaulted the deceased, and struck and beat him upon the head, and thereby gave him divers mortal blows and bruises of which he died, and it appeared in evidence that the death was by the deceased falling on the ground in consequence of a blow on the head received from the defendant, it was held that the cause of death was not properly stated'—citing Rex v. Thompson, 1 Moody, C. C. 139; State v. Reed, 154 Mo. 122, 55 S. W. 278; People v. Tannan, 4 Parker, Cr. R. (N. Y.) 514; Collins v. State, 47 Tex. Cr. R. 303, 83 S. W. 806; Rocha v. State, 43 Tex. Cr. R. 169, 63 S. W. 1018; Gibson v. Commonwealth, 2 Va. Cas. (4 Va.) 111; Rex v. Kelly, 1 Moody, C. C. 113; Wrigley's Case, 1 Lewin, C. C. 127; Rex v. Martin, 5 Car. & P. 128; Gipe v. State, 165 Ind. 433, 75 N. E. 381, 1 L. R. A. (N. S.) 419, 112 Am. St. Rep, 238. 3 Greenleaf on Evidence, sec. 140, states the rule thus: 'But if the evidence be of a death in a manner essentially different from that which is alleged, . . . as if the allegation be of stabbing or shooting, and the evidence be of poisoning, or if the allegation be of death by blows inflicted by the prisoner, and the proof be that the deceased was knocked down by him and killed by falling on a stone, the indictment is not supported.' ''

It was on the principles laid down in the above excerpt that the case of Helmerking v. Commonwealth, 100 Ky. 74, 37 S. W. 264, 18 Ky. Law Rep. 576, was decided. There the indictment charged the accused with murder by striking, beating, bruising, and mortally wounding the deceased. The evidence showed that the accused knocked the deceased down, and that in falling the latter's head struck some hard substance which caused his death. We held that there was a fatal variance between the proof and the charge as set out in the indictment. The case cited with approval the case of Guedel v. People, 43 Ill. 226, holding that under an indictment for murder committed by shooting from a gun the accused could not be convicted where the evidence showed only a killing by a striking on the head with a gun, and that an acquittal under such an indictment would not bar another trial under an indictment charging that the murder was committed by striking the deceased on the head with the gun.

On the essential facts it is impossible to distinguish the present case from the Helmerking case, for which reason the judgment of the lower court is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.