■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL R. ROBERTS, Appellant.—Main, J. Appeal from a judgment of the County Court of Sullivan County (Hanofee, J.), rendered May 29, 1986, upon a verdict convicting defendant of the crimes of manslaughter in the first degree and grand larceny in the second degree.

Defendant was indicted for manslaughter in the first degree and grand larceny in the second degree arising from the death of Blanche Mironov. Specifically, with regard to the manslaughter charge, it was alleged that "defendant, with intent to cause serious physical injury, did *strike* Blanche Mironov in the neck area causing her death" (emphasis supplied). A jury found defendant guilty as charged and he was sentenced to concurrent indeterminate prison terms of 12½ to 25 years on the manslaughter conviction and 3½ to 7 years on the larceny conviction. On this appeal, defendant argues that County Court erred in failing to charge justification as a defense and that the proof did not comport with the allegations of the indictment.

On July 28, 1985, defendant drove a taxi which picked up Mironov at the Aladdin Hotel in the Town of Fallsburg, Sullivan County. Mironov, who may have had some history of imbalanced or eccentric behavior, desired a ride to her home in Westchester County, was quoted a price by defendant's boss and, after paying in advance, was given a receipt for $110. Defendant returned about nine hours later, explaining that the trip took longer than the usual four hours because an accident had delayed traffic, and turned in $135 as the fare because Mironov had requested to go a bit further than she originally indicated and defendant charged a bit more for such.

Mironov's son became concerned when he did not hear from her by mid-August 1985 and he began attempting to locate her. The son made a missing-person report to the police and also spoke with defendant, who explained that he had driven

Mironov to Westchester County where she had left the cab upon meeting a man and woman who she apparently knew and who were traveling in a blue van. Upon inquiry from the police, defendant recited this story and retraced his route with the police, although he could not locate the particular spot where Mironov supposedly left the cab. A neighborhood search revealed no information about the blue van.

On November 18, 1985, Mironov's body was discovered in a wooded, rural area of Sullivan County. That afternoon, defendant initially recounted his story to the police, but after learning that the body had been discovered, defendant altered his version of what happened on July 28, 1985. Defendant now stated that Mironov had fallen asleep in the rear of the cab and had awakened on the Thruway while the cab was proceeding at about 60 miles per hour. She demanded to know who defendant was and where they were going and began to hit defendant about the back and head. After trying unsuccessfully to calm Mironov down verbally, defendant swung at Mironov with a clenched fist because her outburst was interfering with defendant's driving and he was fearful that an accident would result. Defendant recognized that his punch knocked Mironov unconscious, but he continued to drive 30 or 40 minutes before he pulled over to check her. At this time, defendant felt blood on the back of Mironov's head and realized that she was dead. Fearing that no one would believe his story, defendant panicked and drove to a wooded area in Sullivan County where he covered the body with wood. Defendant threw some of Mironov's belongings, including her purse, in the Neversink River and dumped other items elsewhere.

The next day the police discovered several of Mironov's belongings, including the purse, which was closed and full, except for $2,200 that had been placed in the purse by Mironov upon leaving the Aladdin Hotel. Therefore, an autopsy was performed which revealed that Mironov's nose and hyoid bone had been broken while she was alive and that the cause of death was "asphyxia by traumatic compression of neck". Compression of the neck causes death by restricting the windpipe or the carotid artery, thereby depriving the brain of necessary air or blood, respectively, or by pinching the carotid nerve and causing a disruption in bodily functions such as performed by the heart. This apparently occurred when pressure was applied to Mironov's neck in sufficient force to break the hyoid bone, a horseshoe shaped bone in the neck which sits in a rather protected position and is pliable, requiring a substantial, well-directed force to fracture.

At the trial, the prosecution read defendant's Grand Jury testimony, which delineated the story about the blue van and the later version of how Mironov had interfered with defendant's driving, thereby causing defendant to strike one blow with a clenched fist. Dr. Michael Bader, who performed the autopsy, testified that he did not believe that one such blow could have caused Mironov's injuries, especially the broken hyoid bone, although a karate chop might result in such. Dr. Robert Sarreck, the County Coroner who assisted at the autopsy, testified that to break the nose and hyoid bone, two blows were probably required. These doctors, and the prosecution, maintained that strangulation was the almost certain cause of death.

The State constitutional requirement of proceeding by indictment (NY Const, art I, § 6) is designed to (1) provide a defendant with fair notice of the charges against him to permit the preparation of a defense, (2) ensure that the crime for which defendant is tried is the same as intended by the Grand Jury, and (3) protect against double jeopardy by specifying the particular crime at issue *(People v Spann,* 56 NY2d 469, 472; *People v Iannone,* 45 NY2d 589, 594-595). To secure a conviction, a prosecutor need not prove allegations in an indictment which are extraneous to the material elements of the offense charged *(People v Rooney,* 57 NY2d 822, 823). It is not permissible, however, for the theory of prosecution to proceed in a manner at variance with the facts alleged in the indictment *(People v Charles,* 61 NY2d 321, 328-329).

Defendant argues that the People relied on a theory of strangulation and not on the theory that defendant caused Mironov's death by striking her in the neck as alleged in the indictment. By doing so, defendant continues, the People violated the indictment's purposes of providing fair notice to permit the preparation of a defense and of ensuring that the crime for which defendant is tried is the same as that intended by the Grand Jury. With regard to this latter purpose, defendant further points out that the Grand Jury heard evidence about strangulation when the prosecution sought to have defendant indicted for murder in the first degree, but rejected said evidence by indicting defendant for the lesser crime of manslaughter in the first degree. The People counter by arguing that the method specified is not an essential element of the crime and that defendant was aware of the theory of strangulation by his participation in the Grand Jury proceedings and his receipt of the autopsy report which speci-

fied asphyxia by traumatic compression of the neck as the cause of death.

It is apparent to us that the prosecution impermissibly altered the theory of prosecution from that charged in the indictment. By charging in the indictment that Mironov was killed when defendant struck her in the neck and then concentrating on proof tending to establish death by strangulation, the People did not merely alter a factual incident in a way consistent with the indictment. The manslaughter charge was predicated upon defendant's alleged striking of Mironov and intent to cause her serious physical injury. In presenting evidence tending to establish strangulation, the prosecution was proceeding on a theory that defendant intended to kill Mironov, which is a theory different in kind from that charged in the indictment. As such, this case is not like *People v Charles (supra), People v Rooney (supra), People v Spann (supra)* or *People v Feldman* (50 NY2d 500), wherein the proof satisfactorily comported with indictments charging either in the alternative and/or containing extraneous information. Rather, this case is more closely analogous to *People v Kaminski* (58 NY2d 886), wherein the theory of prosecution was impermissibly altered from that contained in the indictment when the jury was instructed to consider definitions of "forcible compulsion" beyond that set forth in the indictment.

The People correctly point out that a Grand Jury, when confronted with two versions of a criminal event, may indict for the lesser charge *(see, People v Sullivan,* 68 NY2d 495, 501). In this case, though, we are concerned with the specific allegations of the indictment and the proof presented at trial. It may very well be that the Grand Jury chose to indict for a crime less than that sought by the prosecution, but such does not permit the People to specify certain allegations in the indictment and then advance a wholly different theory at trial. Such is what occurred herein and, by doing so, the prosecution infringed upon the first two purposes of an indictment as outlined above. Therefore, the conviction for manslaughter in the first degree must be reversed. Having reached this conclusion, resolution of the justification defense issue is unnecessary.

Judgment modified, on the law, by reversing defendant's conviction for manslaughter in the first degree; matter remitted to the County Court of Sullivan County for a new trial on the first count of the indictment in accordance with this court's decision; and, as so modified, affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.