757 P.2d 230

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Jerry Wayne CAMPBELL, Defendant–Appellant.**

**No. 16313.**

Court of Appeals of Idaho.

June 2, 1988.

John K. Gatchel, Payette, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

On this appeal, the defendant, Jerry Campbell, challenges his judgment of conviction for murder in the second degree, for kidnapping in the first degree and for aggravated battery. He raises issues concerning corroboration of accomplices' testimony, selective prosecution, inclusion of the aggravated battery charge as a lesser offense in the kidnapping or murder counts, and whether the state failed to provide advance notice of a sentence-enhancement allegation. For reasons given below, we affirm.

Viewing the evidence in the light most favorable to the prosecution, *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App. 1982), the following facts appear. In late October, 1984, during the early morning hours, the victim, Mac Atwood, went to the house of a friend, Jerry Campbell. Campbell shared this home with several other people, including his girlfriend, Sherrie Robertson, and Kelly Vern Hemenway. While Hemenway was asleep on the first floor, he was awakened when he heard someone enter the darkened house. Hemenway sought out and alerted Campbell and Robertson who were asleep on the second floor. Campbell and Hemenway returned downstairs and confronted the intruder. Hemenway kicked out and struck the intruder.

Moments later the lights were turned on and Atwood was identified. Atwood was taken upstairs by Campbell and Hemenway. Apparently, as a result of earlier contacts between Campbell, Hemenway, Robertson and Atwood—involving supposed thefts by Atwood—Campbell and Hemenway began to severely beat Atwood. Later, Atwood's hands were bound behind his back with wire, and a sack was placed over his head. The sack was tied around Atwood's neck to prevent blood from falling to the floor. Atwood was then forced from the house by Campbell, Hemenway and Robertson. Atwood was placed in a car and driven by Campbell, Hemenway and Robertson for twenty to thirty minutes to a secluded location along the Payette River. Atwood, still alive at this point, was taken from the car. According to the testimony of Hemenway and Robertson, Campbell beat Atwood with a hammer, delivering multiple blows to Atwood's skull. After that beating, Hemenway approached Atwood and attempted to cut the sack from around Atwood's head. In doing so, Hemenway cut Atwood's throat, although the wounds were later declared to be nonfatal by the pathologist who conducted Atwood's

autopsy. Campbell then took Atwood's body—with the hands still bound—and placed it face down in the Payette River.

After the body was recovered approximately a month later, Campbell was arrested. He was tried before a jury and was found guilty of murder in the second degree, of kidnapping in the first degree and of aggravated battery. The court imposed a fixed-life sentence for the murder, a fixed-life sentence for the kidnapping, and a fifteen-year fixed sentence on the aggravated battery count. All sentences were ordered to be served concurrently.

On appeal, Campbell contends that: (1) the testimony of the accomplices, Robertson and Hemenway, was not corroborated, as required by Idaho law; (2) without corroboration of the accomplices' testimony, the evidence presented at trial was insufficient to sustain the jury verdict on all counts; (3) the district court erred in failing to rule on Campbell's motion for a new trial; (4) selective prosecution of Campbell occurred when the state granted immunity to Robertson and also declined to charge Hemenway with murder in the first degree; (5) Campbell should not have been found guilty of aggravated battery, because that crime is a lesser included offense either of the second-degree murder or of the first-degree kidnapping; (6) it was error for the prosecution to seek an enhanced sentence for Campbell as a persistent violator without first providing notice to the defense as required under I.C. § 19–2520. We shall address each of these issues in turn.

## I

Campbell first asserts that the evidence presented at his trial was insufficient to sustain the jury verdict because the testimony of the accomplices—Robertson and Hemenway—was not corroborated. The requirement of corroboration of testimony from an accomplice is found in I.C. § 19–2117:

> A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect

the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.

The purpose of the corroboration requirement is to offset the danger that an accomplice may wholly fabricate testimony inculpating an innocent person in order to win more lenient treatment for the alleged accomplice. *State v. Pierce*, 107 Idaho 96, 101, 685 P.2d 837, 842 (Ct.App.1984). The corroborating evidence offered "need only connect the defendant with the crime." *State v. Aragon*, 107 Idaho 358, 364, 690 P.2d 293, 299 (1984); *State v. Bassett*, 86 Idaho 277, 385 P.2d 246 (1963). The corroborating evidence must be independent of the accomplice's testimony, but it need not be sufficient in and of itself to convict the defendant. *State v. Aragon, supra; State v. Gillum*, 39 Idaho 457, 228 P. 334 (1924). The corroborating evidence may be slight, need only go to one material fact and may be entirely circumstantial. *State v. Evans*, 102 Idaho 461, 631 P.2d 1220 (1981); *State v. Brown*, 53 Idaho 576, 26 P.2d 131 (1933). Statements made by a defendant may supply the corroboration of an accomplice that is necessary for conviction. *State v. Garcia*, 102 Idaho 378, 630 P.2d 665 (1981); *State v. Larsen*, 81 Idaho 90, 337 P.2d 1, *cert. denied*, 361 U.S. 882, 80 S.Ct. 154, 4 L.Ed.2d 119 (1959); *State v. Brown, supra*. With these principles in mind, we shall now examine the evidence presented at Campbell's trial.

In respect to the aggravated battery charge, testimony was offered by Hemenway and Robertson that Campbell had repeatedly kicked Atwood in the body. The autopsy examination of Atwood's body revealed he had two fractured ribs, and contusions, bruises and abrasions on the skin surface overlaying those ribs. Dr. Maier, the pathologist who conducted the autopsy, opined that, because of a lack of bleeding associated with the fracture, the injuries had occurred a short time prior to Atwood's death and were consistent with the testimony of the accomplices. Without any question, the autopsy corroborated the

accomplices' testimony describing the infliction of severe injuries on Atwood. However, under I.C. § 19–2117, evidence that is merely corroborative of the "commission of the offense, or the circumstances thereof" is not enough. Instead, the evidence necessary to serve as corroboration of the accomplice's testimony must tend "to connect the defendant with the commission of the offense." We believe that evidence surfaces in conjunction with certain evidence relative to the kidnapping charge.

In respect to the kidnapping, although there is the challenged testimony of Hemenway and Robertson about restraining and abducting Atwood and transporting him to the river, that testimony was corroborated by the eventual discovery of Atwood's body in the Payette River with Atwood's hands bound behind his back. This alone satisfied all of the elements of kidnapping in the first degree save one, the identity of Campbell as a participant. While Hemenway and Robertson testified that Campbell was a participant, corroboration of that assertion was still required. I.C. § 19–2117.

For this corroboration we turn to words spoken by Campbell himself. In a conversation with Mrs. Mac Atwood, prior to the discovery of her husband's body by the police, Campbell told Mrs. Atwood that some people called "the Parker Brothers ... had got to him and that we would find him in *the Payette River.*" (Emphasis added.) In another conversation, Campbell spoke with a friend, Glen Bennett, prior to the discovery of Atwood's body. Campbell intimated to Bennett that Atwood had been "taken to the river." This particular knowledge of the probable location of the body prior to its discovery together with the condition of the body as described by Dr. Maier's autopsy and the fact that Atwood's hands were tied behind his back could lead a jury to believe that Campbell was a participant in both the aggravated battery and the kidnapping. The jury was free to conclude that Campbell's disclo-

sures corroborated the testimony of Hemenway and Robertson as to these two charges.

In respect to the second-degree murder conviction, the state was required to prove the following elements beyond a reasonable doubt: (1) The defendant, Jerry Campbell, (2) on or about October, 1984, (3) in Payette County, Idaho, (4) with malice aforethought (5) unlawfully and intentionally (6) killed Mac Ray Atwood, a human being. Elements 2, 3, 4, 5 and 6 were shown by the testimony of Hemenway and Robertson and corroborated by the discovery and examination of the body of Atwood.

■ While the testimony of the accomplices indicated Campbell was the murderer and acted with malice aforethought, it is Campbell himself who again provided the necessary corroboration. In addition to the statements Campbell made to Mrs. Atwood and Mr. Bennett, Campbell made statements to several other people that showed his participation in the alleged murder.

A Detective Holloway testified that Campbell said to him: "I killed my brother."[1] Holloway further testified that on another occasion Campbell told him "we shouldn't be charging him with first-degree murder, because he hadn't planned on killing Mr. Atwood." Officer Haines heard Campbell state "[t]hat he had killed his brother and had no right to live and wanted a confession taken to a judge and be executed immediately." This same statement was also heard by Deputy Crosby, a jailer, who was present. A few days later, Campbell made the following statement to Crosby: "Would you tell Kelly [Hemenway] to quit saying about killing—or about hanging me and the Circle K robber? It's blowing my mind.... I know I killed Mac [Atwood], but so did he [Hemenway]."

As we noted earlier, the corroborating evidence "need only connect the defendant with the crime." *Aragon, supra.* Campbell's connection to the murder was shown by his own admissions. Considering all of

---

1. Throughout the proceedings various witnesses testified that Campbell often referred to Atwood as "my brother" or "Bro."

the evidence in this case, we conclude the jury could find that the requirement of the corroboration of the accomplices' testimony was met.

## II

■ Aside from the corroboration issue just discussed, Campbell also contends generally that the evidence was insufficient to sustain the jury's verdict. On review, a judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Filson,* 101 Idaho 381, 613 P.2d 938 (1980). All facts and inferences drawn from those facts will be construed in favor of upholding the lower court decision. *State v. Aragon, supra.* We are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Decker,* 108 Idaho 683, 701 P.2d 303 (Ct. App.1985). We view the evidence in the light most favorable to the respondent. *Id.*

Here Campbell does not point to any particular deficiency in the evidence with respect to the elements of the crimes of which he was found guilty. Without restating the evidence discussed in Part I above, we conclude that sufficiently corroborated testimony and evidence existed to sustain the jury verdict finding Campbell guilty of murder in the second degree, kidnapping in the first degree and of aggravated battery.

## III

Initially, Campbell asserted—as an issue on appeal—that the district court erred in failing to rule on his motion for a new trial. In its responding brief, the state disputed Campbell's assertion, by directing our attention to the court's ruling, in the record,

denying the motion for new trial. Consequently, Campbell changed the focus of his attack. He now contends the court erred in denying the motion. For support, he restates portions of the evidence admitted at trial and suggests general error in the interpretation of the evidence by the judge and jury. We thus approach this issue as now stated by Campbell, i.e., whether the court erred in refusing to grant him a new trial.

Motions for a new trial are governed by I.C.R. 34. The rule allows a court to order a new trial "if required in the interest of justice." The question whether the interest of justice requires a new trial under the circumstances of a particular case invokes the discretion of the trial court; and the trial court's decision in that regard will not be disturbed unless an abuse of discretion is shown. *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982).

We are not persuaded by Campbell's assertion that the court or jury "misinterpreted" any evidence. We are not pointed to any specific error which—in the interest of justice—should require a new trial. The record shows that the district court took elaborate steps to review Campbell's motion for a new trial and to explain its findings before denying Campbell's motion. Campbell has failed to demonstrate any abuse of discretion by the district court. We hold the district court committed no error in denying Campbell's motion for a new trial.

## IV

■ Campbell next contends that the decision by the prosecutor to grant immunity from prosecution to Robertson, and the decision not to charge Hemenway with murder in the first degree,[2] amounted to selective prosecution. In response, the state submits that Campbell failed to raise this issue before the district court. Our review of the record confirms the state's position. We fail to find anywhere in this record that

---

**2.** Hemenway was charged with and found guilty of second-degree kidnapping and of aiding and abetting in the commission of an aggravated battery. Hemenway received concurrent, indeterminate sentences of twenty-five years for the

kidnapping and fifteen years for the battery. His judgment of conviction and sentences were affirmed on appeal. *State v. Hemenway,* 111 Idaho 839, 727 P.2d 1267 (Ct.App.1986).

Campbell in fact sought relief from the district court on grounds of selective prosecution. Issues that are not raised at the trial court level generally will not be considered on appeal. *State v. Sharp*, 101 Idaho 498, 616 P.2d 1034 (1982). Campbell's failure to raise this issue before the district court has precluded the making of a record concerning the state's charging decision and leaves us with nothing to review. Because the issue of selective prosecution is largely one of fact, the importance of making an evidentiary record cannot be overstated. As we recently explained in *State v. Gilbert*, 112 Idaho 805, 807, 736 P.2d 857, 859 (Ct.App.1987):

> The defense of selective prosecution is part of a web of constitutional constraints that overlie the discretionary powers accorded to prosecuting authorities. So long as the prosecutor has probable cause to believe that a suspect has committed an offense defined by statute, the decision whether to prosecute, and what charge to file, rests in the prosecutor's discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Such discretion is allowed because a decision to prosecute is generally ill-suited to judicial review. *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).
>
> Nevertheless, the Supreme Court in *Wayte* has recognized a defense of selective prosecution and has outlined its substantive elements. A defendant bears the burden of establishing (1) that he was singled out for prosecution and (2) that the decision to prosecute him, rather than other persons, was based upon an impermissible factor such as race, religion or the exercise of a constitutional right. *Id.* [Citations omitted.] The defense may be established by showing that the state selected the defendant from a larger group of non-prosecuted alleged violators because of his exercise

of a constitutional right. [Citation omitted.] However, incomplete enforcement of the laws, standing alone, does not offend the federal or state constitution. [Citations omitted.]

Other than the bare assertion Campbell makes for selective prosecution, there was no evidence presented to satisfy either prong of the test in *Wayte*. Absent a showing to the contrary, we conclude that no error occurred and that Campbell was not subjected to selective prosecution.

## V

Campbell next questions whether the aggravated battery in this case is a lesser included offense of either the second-degree murder or of the first-degree kidnapping. In essence, Campbell asserts that any battery committed would necessarily have been a part of the acts needed to effect either the kidnapping or the murder. While Campbell has provided authority for this proposition he has failed to supply any argument, orally or in his briefs, to support his claim. The state, citing *State v. Cardona*, 102 Idaho 668, 637 P.2d 1164 (1981) and *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978), urges that since no argument is offered by Campbell, we should not consider the issue. These cases apply where an assignment of error is not supported by argument *or* authority. In the instant case, Campbell cites authorities in his appellate brief and we will therefore examine the issue. *State v. Smoot, supra.*

The state filed three separate counts against Campbell, charging him with murder in the first degree, kidnapping in the first degree and aggravated battery.[3] It is clear that a defendant may not be convicted of both a greater and a lesser included offense. I.C. § 19–1719; *State v. McCormick*, 100 Idaho 111, 114, 594 P.2d 149, 152 (1979). "An 'included offense' is one which

---

**3.** Each charge in the Information contained specific allegations. In Count I, the first-degree murder was alleged to have occurred "by hitting Mac Ray Atwood on and about the head with a hammer from which he died." The first-degree kidnapping was alleged in Count II to have occurred by "seiz[ing] Mac Ray Atwood ... with

the intent to detain Mac Ray Atwood for the purpose of committing• serious bodily injury upon the person kidnapped." Finally, Count III alleged aggravated battery by "us[ing] force upon the person of Mac Ray Atwood, causing great bodily harm, to-wit: broken ribs, bruises and abrasions."

is necessarily committed in the commission of another offense; or one, the essential elements of which are, charged in the information as the manner or means by which the offense was committed." *State v. McCormick, supra,* at 114, 594 P.2d at 152 (1979), *quoting State v. Hall,* 86 Idaho 63, 383 P.2d 602 (1963).

In the instant case the facts reveal that Atwood was initially confronted and attacked by Hemenway on the first floor of the house. Atwood was then taken to the second floor where he was beaten by Campbell who repeatedly kicked Atwood in the chest. Although this attack temporarily subsided, after a period of time Campbell renewed the attack. This second attack was precipitated by a belief that Atwood—at some earlier time—had stolen Hemenway's wallet. Hemenway threw Atwood into a wall and Campbell began kicking Atwood again. This attack wound down and eventually stopped. Atwood's hands were then bound behind his back with wire. Subsequently, Hemenway and Campbell stepped into a hallway and made the decision to do something to Atwood other than to beat him. Atwood was then removed from the house, taken to the river nearby, beaten further, and his body disposed of in the river.

█ We turn first to the question whether the alleged aggravated battery was a lesser included offense of kidnapping. In the context of the facts of this case, I.C. § 18–4501 provides the following pertinent definition: "Every person who wilfully [s]eizes, confines, inveigles or kidnaps another, with the intent to cause him, without authority of law, to be ... detained against his will ... is guilty of kidnapping." Thus, when Atwood was detained against his will in Campbell's house, the crime of kidnapping was complete. That he was also beaten neither adds to nor detracts from the completion of the kidnapping. The beating simply made the kidnapping punishable as kidnapping in the first degree, as compared with second-degree kidnapping. I.C. § 18–4502 provides:

Any kidnapping committed for the purpose of ... committing serious bodily injury upon the person kidnapped ... shall be kidnapping in the first degree.

The aggravated battery, although sequentially related to the kidnapping, was a separate and distinct crime, requiring elements of proof beyond that required for the kidnapping. *See State v. Martinez,* 109 Idaho 61, 66, 704 P.2d 965, 970 (Ct.App.1985) *overruled on other grounds* 111 Idaho 281, 723 P.2d 825 (1986). *See also, State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980) (kidnapping and robbery of victim constituted two separate crimes); *State v. Greensweig,* 103 Idaho 50, 644 P.2d 372 (Ct.App.1982) (kidnapping victim, and assault of the victim with intent to commit rape, constituted two separate crimes). We hold that the aggravated battery was not a lesser included offense of the kidnapping.

█ With respect to whether the battery was an included offense of the murder, a jury reasonably could conclude from the evidence that Atwood had suffered an aggravated battery *prior* to the germination of the idea to murder him. The subsequent murderous beatings were separate and distinct from any other violence suffered by Atwood. The jury was correct in finding and the district court correct in upholding that the aggravated battery was not a lesser included offense of either the kidnapping or the murder.

## VI

█ Finally, Campbell contends that, under I.C. § 19–2520, the state was required to inform Campbell at or before the preliminary hearing that the state was seeking an *enhanced sentence.* Campbell's reliance on I.C. § 19–2520 is misplaced. That statute provides the procedure for notice and for enhancement of a sentence imposed for crimes when a firearm is involved. Here, the record shows that in the Information the state sought, pursuant to Idaho Criminal Rule 7, enhanced sentencing based on Campbell's prior felony convictions. *See* I.C. § 19–2514. Consequently, the court sentenced Campbell as a persistent violator pursuant to I.C. § 19–2514, not pursuant to I.C. § 19–2520. Idaho Code § 19–2514

does not require notice be given a defendant at or before the preliminary hearing. It requires notice only through an allegation in the Information filed in district court—as was done here. We hold that Campbell's argument that proper notice was not given is without merit.

For the reasons given above we conclude that there was no error committed by the district court. The judgment of conviction is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting.

I regret that I am unable to join in today's opinion. Whenever a heinous crime has been committed, there is a strong temptation to affirm the judgment of conviction despite troubling questions. In this case, such questions exist with respect to the state's pleading and proof of the murder charge and with respect to the separate convictions of battery and kidnapping. For reasons set forth below, I would vacate the judgment and remand the case for a new trial.

Prefatorily I must observe, with due respect to my colleagues, that the Court's opinion suffers from a fundamental inconsistency. When it discusses the murder conviction, the opinion adopts a broad, undifferentiated view of the evidence. It treats the homicide as the result of injuries inflicted over a prolonged, loosely defined period of time. However, when the opinion discusses the separate convictions for kidnapping and battery—and the corroboration of accomplice testimony regarding those offenses—it adopts a segmented view of the evidence. It draws facts from a continuous flow of events and artificially groups them under the headings of separate criminal charges.

In the analysis which follows, I submit that the segmented approach fails in its attempt to achieve a meaningful distinction between the alleged battery and kidnapping on one hand, and the alleged murder on the other. I then turn to the issues arising from the state's pleading and proof of murder, explaining why a new trial should be granted on that charge.

I

In the prosecutor's information, the state has alleged that Campbell committed an aggravated battery by "willfully and unlawfully [using] force upon the person of Mac Ray Atwood, causing great bodily harm, to-wit: broken ribs, bruises and abrasions...." This conduct occurred at Campbell's house and was witnessed only by the two alleged accomplices. In order to satisfy the accomplice corroboration requirement, today's opinion declares that the battery charge was substantiated by the autopsy's finding of broken ribs. Of course, as the opinion itself acknowledges, this merely shows the commission of the offense, not Campbell's participation in it. To corroborate Campbell's participation, the opinion turns to his inculpatory statements about a body in the river. I fail to see how these statements corroborate a battery as distinguished from the homicide.

Similarly, I question whether the evidence, taken as a whole, shows particular acts by Campbell which constitute battery as distinguished from homicide. As I will explain in a moment, the state failed to prove its contention that the homicide was committed by inflicting hammer blows upon the victim at the edge of the Payette River. Implicitly acknowledging this lack of proof, the Court today broadens the murder charge to include the beating at the house. The Court then attempts to distinguish this redefined murder from a battery by suggesting that there was an initial outburst of violence at the house, followed by a pause and later followed by a decision to take the victim to the river where he would be killed. I find little support in the record for this "pause" scenario. Moreover, the state's pathologist testified that death occurred very near the time when the ribs were fractured. In fact, his written report suggested that death already had occurred by that time. These facts leave virtually no room to postulate the existence of a "battery beating" separated by a significant time from the "murder beating."

The Court also uses Campbell's statements about a body in the river to furnish

the requisite corroboration on the kidnapping charge. These statements would be corroborative only if the kidnapping consisted of taking the victim against his will from the house to the river. But the prosecutor's information described the kidnapping as "willfully seizing [Atwood] and detaining him for the purpose of committing serious bodily injury." The Court today follows the same approach, asserting that the kidnapping consisted of detaining the victim at the house while he was beaten. When the kidnapping is so characterized, the statements about a body in the river are not corroborative. Moreover, there is no genuine distinction between the acts constituting such a kidnapping and the acts constituting a battery.

Accordingly, I would hold that I.C. § 18–301 precludes a separate conviction for kidnapping as distinguished from battery, and for battery as distinguished from the redefined murder. The case is narrowed to the degree of Campbell's criminal responsibility for Atwood's death.[1]

## II

I now turn to the state's pleadings and proof on the charge of murder.

### A

In the prosecutor's information, the state alleged that Jerry Wayne Campbell had committed murder by "hitting Mac Ray Atwood on or about the head with a hammer from which he died...." The state's proof of the cause of death rested upon an opinion offered by a pathologist who had conducted an autopsy after Atwood's body was retrieved from the Payette River. The autopsy was recorded on video tape and the pathologist's objective findings were set forth in a written report. Those objective findings did not support the theory that death had been caused by hammer blows to the head. The skull exhibited no fractures.

The cranial cavity was found to contain no evidence of hemorrhaging which would have been produced by trauma sufficient to cause death. Moreover, as mentioned earlier, the pathologist's report noted that lung lacerations produced by rib fractures (which, according to the state's evidence, had occurred at Campbell's house) resulted in little hemorrhaging. According to the pathologist's written report, this indicated that death had occurred very near, perhaps before, the point in time when the rib fractures were sustained.

Despite these objective findings, the pathologist concluded, by what he described as a process of exclusion, that death was caused by head trauma inflicted with a hammer or other blunt instrument. This conclusion was vigorously disputed by a defense expert, a pathologist with extensive experience in forensic medicine. Having reviewed the autopsy and the examining pathologist's notes, the defense expert cogently argued that no logical link existed between the objective findings and the conclusion that death had resulted from hammer blows. He thoroughly rebutted the examining pathologist's suggested reasons for a lack of skull fractures or evidence of cranial hemorrhaging. He also explained how an incomplete examination, coupled with a process of exclusion, could lead to an unreliable determination of the cause of death.

Ordinarily, a doctor's opinion constitutes substantial evidence upon which a jury verdict may be upheld. It is rare that such an opinion is so thoroughly discredited by another expert that it cannot be deemed substantial evidence. However, after carefully reading and re-reading the record before us, I am convinced that this is such a case.[2] The testimony of the state's pathologist did not constitute substantial evidence that

---

1. Although the acts comprising a battery cannot be distinguished from the redefined murder, this does not mean that the issue of battery is wholly displaced. Upon a retrial, the jury still could be instructed on battery as a lesser included offense of murder.

2. In reaching this conclusion, I have not relied upon juror affidavits submitted to the district court by Campbell in support of his motion for a new trial. Those affidavits indicated that the jury was unable to find the specific time or cause of death. However, such affidavits are inadmissible under I.R.E. 606(b).

Mac Atwood died as alleged in the prosecutor's information.

## B

Although the evidence was insufficient to prove the state's pleaded theory regarding the cause of death, a possibility remained that death may have resulted from an accumulation of injuries sustained during the beating administered at Campbell's house. The Court today invokes this possibility in upholding the murder conviction. However, this poses a nettlesome question —whether it is permissible to charge Campbell with murder on one factual premise but to uphold his conviction on a different premise.

The question, essentially, is one of variance between the state's pleading and its proof. The Sixth Amendment to the United States Constitution provides that an accused must be "informed of the nature and cause of the accusation" against him. The state's pleading must give sufficient notice of the factual basis of the charge to enable the accused to prepare an adequate defense and to protect him against a second prosecution for the same offense. *See generally* C. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 504 (12th ed. 1975). Accordingly, Rule 7(b), of the Idaho Criminal Rules requires a prosecutor's information to contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."

Of course, not every variance between pleading and proof raises a constitutional issue. For example, if the state alleges that the defendant has used an instrument to commit a crime, there is no constitutionally impermissible variance if the state later proves that the crime was committed with another object of the same generic description. *E.g., People v. Carter*, 57 Ill. App.3d 84, 14 Ill.Dec. 814, 372 N.E.2d 1093 (1978); *Patton v. State*, 696 S.W.2d 249 (Tex.App.1985). Neither is there an impermissible variance where the state pleads and proves a specific cause of death but the evidence also shows a concurrent and virtually contemporaneous cause. *E.g., Jones v. State*, 644 S.W.2d 530 (Tex.App.1982).

The present case falls in neither of these categories. The beating at Campbell's house was not accomplished with any instrument generically identical to a hammer. Neither can the beating at the house be regarded as a cause of death concurrent and contemporaneous with the infliction of hammer blows at the Payette River. The variance here relates directly to the conduct which the state has charged as the commission of the crime. A material variance as to the alleged conduct infringes upon the defendant's constitutional right to be apprised of the factual basis of the charge against him. *See, e.g., Patrick v. State*, 117 Fla. 432, 158 So. 101 (1934) (state alleged that defendant shot victim, but proof showed that defendant assisted victim in shooting himself); *Murphy v. Commonwealth*, 226 Ky. 169, 10 S.W.2d 626 (1928) (state alleged that defendant committed murder by striking victim in head with hard object, but proof showed that fatal injury was caused by hard substance on earth after victim was knocked down); *People v. Roberts*, 135 A.D.2d 1026, 523 N.Y.S.2d 182 (1987) (state alleged that defendant murdered victim by striking her, but proof showed that victim died of strangulation).

In this case the variance between the state's pleading and proof may have been obscured by the state's charging of multiple offenses. When the state adduced its evidence at trial regarding Campbell's participation in the beating at the house, Campbell had no basis to object to a variance between pleading and proof of murder. The evidence arguably was relevant to the separate charge of battery, or even to the charge of kidnapping as the state had characterized it. *Compare Ridgeway v. State*, 251 Ark. 157, 472 S.W.2d 108 (1971) (holding that defendant accused of a single offense waived any variance between pleading and proof by failing to object when the variant evidence was introduced at trial). By charging multiple offenses, and by presenting evidence undifferentiated as to the offenses charged, the prosecutor opened the door for the jury to

find Campbell guilty of murder upon a factual theory not alleged.

### C

Because there is a substantial likelihood that Campbell was convicted of murder upon a factual theory materially at variance with the prosecutor's information, the next question is whether a new trial would be "in the interest of justice" as provided in Rule 34, I.C.R. Campbell moved for a new trial, but the motion was denied. The judge expressed much disquietude about the evidence on the murder charge, but he finally concluded that it was the jury's function to weigh evidence upon which reasonable minds could disagree. The judge also commented that, in his view, Campbell and the two accomplices were all guilty of "first degree murder."

The judge's ruling was thoughtfully considered, but it contained three shortcomings. First, it failed to take account of the apparent variance between pleading and proof on the murder conviction. Second, the judge's stated misgivings about the evidence could not be reconciled with his flat declaration that all three individuals were guilty of first degree murder. Even the jury was not willing to go that far. Third, the judge did not apply the legal standard by which motions for new trials in criminal cases are to be decided.

As noted above, Rule 34, I.C.R., provides that the court may grant a new trial "in the interest of justice." This rule, as we explained in *State v. Palin*, 106 Idaho 70, 675 P.2d 49 (Ct.App.1983), embraces—and is broader than—the statute it superseded, I.C. § 19-2406. Under the current rule, a new trial may be granted where the judge, acting as a "thirteenth juror," finds the evidence in support of the verdict to be doubtful and conflicting. In this respect, a clear distinction exists between the standard governing a motion for a new trial under Rule 34 and the standard governing a motion for judgment of acquittal under I.C.R. 29. *See* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE (CRIMINAL) § 553 (1982) (discussing comparable federal rules). A motion for judgment of acquittal must be denied when there is substantial, albeit disputed, evidence of guilt. *E.g., State v. Mata*, 107 Idaho 863, 693 P.2d 1065 (Ct.App.1984). The judge in this case erroneously applied the judgment of acquittal standard when he denied Campbell's motion for a new trial because reasonable persons could disagree over the conflicting evidence.

When the correct standard is applied, I conclude that a new trial on the murder charge should be granted "in the interest of justice." The evidence in support of the verdict was unusually doubtful and conflicting. Indeed, as I have stated, it did not even reach the threshold of substantial evidence unless the homicide was broadened to include acts not alleged in the murder count of the prosecutor's information.

I entertain no doubt that Campbell bears some criminal responsibility in this tragic case. But whether the level of his responsibility rises to second degree murder is a question that should be answered by a jury upon a charge properly pleaded and upon evidence adduced within the scope of that pleading.